THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, v.
MICHAEL ALLMAN *et al.*, Defendants-Appellants.

First District (3rd Division)   No. 1—86—2410

Opinion filed March 8, 1989.

Paul B. Biebel, Jr., Public Defender, of Chicago (Dennis E. Urban, Assistant Public Defender, of counsel), for appellants.

Richard M. Daley, State's Attorney, of Chicago (Inge Fryklund, Andrea K. Muchin, and Judith C. Rice, Assistant State's Attorneys, of counsel), for the People.

JUSTICE McNAMARA delivered the opinion of the court:

Following a jury trial, defendants, Michael Allman and Thomas Allman, were convicted of aggravated criminal sexual assault, aggravated battery and unlawful restraint. Michael Allman also was convicted of robbery. Defendants each were sentenced to concurrent imprisonment terms of 10 years for aggravated criminal sexual assault, seven years for aggravated battery, and two years for unlawful restraint. Michael additionally received a six-year concurrent sentence for robbery. Defendants appeal, alleging that the State did not prove them guilty of aggravated criminal sexual assault, or Michael Allman guilty of robbery, beyond a reasonable doubt; that they improperly were convicted of the lesser included offenses of aggravated battery and unlawful restraint as these convictions arose from the same conduct as did the conviction for aggravated criminal sexual assault; and that the seven-year sentence for aggravated battery was imposed unlawfully.

The victims testified to the following facts. On July 2, 1984, the female victim met the male victim at his mother's home. They stayed there for a few hours, talking and drinking beer. At approximately 9:30 or 10 p.m., they walked to a bar and split a drink. They then hitchhiked to another bar, where they each had two drinks. They then

proceeded to a third bar, arriving at approximately 2:30 or 3 a.m.

There, the victims struck up a conversation with the two defendants and four other individuals. Each of the victims consumed four drinks while at the bar. Paul Joyce, one of the individuals with defendants, began to talk to the male victim. Later, Joyce danced with the female victim.

The victims left the bar at 4 a.m. The female victim had asked Joyce if she and the male victim could have a ride home. The victims entered the automobile with the two defendants, Joyce, and three men who also were with defendants. The car was driven by one of the other men. The two defendants were seated in the front. The victims were in the back seat, the female victim on Joyce's lap.

Michael Allman directed the driver to proceed to Oak Lawn, where the male victim lived. At 92nd and Harlem, Michael directed the driver to pull off onto the gravel road. The men exited the vehicle to urinate. The female victim remained near the vehicle. The male victim walked away from the car but started back when he heard the female victim cry out. The female victim testified that Joyce had been touching her shoulders and breasts. The male victim put his arm around the female victim and suggested that they leave. Michael then hit the male victim on the side of the head and forced him to walk to some bushes located 20 to 30 feet away from the vehicle.

The male victim testified that Michael ordered him to give up his money. Michael threatened to kill him if he refused. When the male victim told Michael that he did not have any money, Michael went into the male victim's pants pocket and pulled out his wallet. Defendants then pulled off his pants and boots. The male victim indicated that he could not get up because he constantly was being punched and kicked in the head.

The male victim stated that at some point he lost consciousness. He next recalled that he was pulled onto the gravel road and was placed on his stomach. He stated that someone took a shoe and tried to shove it into his anus. He could not identify who had done this. He further stated that he then felt a penis in his anus, but again could not identify who had done this. He additionally felt someone urinate on his back. He lost consciousness again and when he awakened, defendants and the other individuals were beating and kicking him and he could hear them laughing.

The female victim testified that after the male victim suggested they leave, she was hit in the back of the head and she fell to her knees. Although she could not see who hit her, both defendants were standing near her. One of the other men came over and forced her to

perform oral sex on him for several minutes. During this time, she could hear the male victim screaming. Joyce and Michael then began beating her about the head and face with a hard object. Someone pulled her pants off and got on top of her. She believed that it was Michael. She felt Michael trying to penetrate her with his penis. Another man and Joyce also attempted to have sexual intercourse with her. She then lost consciousness. When she awakened, she was being beaten by both defendants, Joyce, and two of the other men. She stated that she was struck on her head, body and anus with a hard object.

After defendants and the other individuals left, the male victim got up to look for the female victim. He picked her up off the ground and they walked down Harlem to get help. Both were naked from the waist down. They eventually gained entry to a building on Harlem, and at approximately 5:15 a.m., the police and the paramedics were called.

The victims were taken by ambulance to Christ Hospital. The female victim remained in the hospital for four days and was treated for a broken finger, a fractured nose and a hole in her inner thigh. The male victim was not admitted to the hospital, but did receive sutures in various portions of his head. Both victims were examined for evidence of semen. The results of those tests were negative. The victims additionally were given blood-alcohol tests. The percentage of alcohol in the male victim's blood was 1.53 and the percentage of alcohol in the female victim's blood was 2.07.

While at the hospital, the male victim viewed a group of photographs brought in by Sergeant Dapkus of the Bridgeview police department. The male victim identified Joyce and both defendants. The next day, Dapkus arrested Joyce and Michael. (Thomas fled and was not arrested until a year later.) At a lineup conducted the day of the arrest, the male victim identified Michael. Dapkus took lineup photographs to the hospital and showed them to the female victim. She also identified Michael.

At trial, the victims' testimony was corroborated by the State's witness, Luaftha Jones. Jones was one of the individuals present that evening. Jones testified that although he was under indictment for the July 3, 1984, incident, he had agreed to testify in this case and the State's Attorney's office had agreed to recommend that he be incarcerated for four years.

Jones testified that the victims met defendants and four other individuals at a bar; that the group left together when the bar closed; that on the way to the male victim's home, the group pulled off onto

a gravel road; and that after the group exited the vehicle, Michael hit the male victim on the side of the head and forced him to walk over behind some bushes. Michael then forced the male victim to lie on his stomach with his hands behind his head. Jones saw Michael urinate on the male victim's back and try to push a shoe into his anus.

Jones also testified that after Michael dragged the male victim away, one of the other men forced the female victim to perform oral sex on him. A few minutes later, defendants and Joyce began to beat the female victim and to attempt to have sexual intercourse with her. Thomas subsequently dropped a brick on her. Jones heard Michael threaten to kill the male victim and heard Thomas threaten to kill the female victim.

Defendants first contend they were not proved guilty beyond a reasonable doubt of aggravated criminal sexual assault. Michael additionally contends he was not proved guilty beyond a reasonable doubt of robbery. Defendants maintain that the testimony of the victims regarding the incidents which occurred that night was improbable, incredible and unconvincing so as to require reversal of their aggravated criminal sexual assault convictions and of Michael's robbery conviction. We do not agree.

■ Generally, a reviewing court will not reverse a conviction unless the evidence presented to the jury has been so improbable as to raise a reasonable doubt of defendant's guilt. (*People v. Manion* (1977), 67 Ill. 2d 564, 367 N.E.2d 1313.) In those cases involving sex offenses, the reviewing court has a special duty to scrutinize the evidence closely. (*People v. Olesch* (1986), 143 Ill. App. 3d 577, 492 N.E.2d 1381.) Nonetheless, a verdict of guilty is not subject to reversal simply because the jury has chosen to believe the evidence presented by the prosecutor. (*People v. West* (1981), 102 Ill. App. 3d 50, 429 N.E.2d 599.) A reviewing court may not substitute its judgment for that of the trier of fact on questions involving weight of evidence or credibility of witnesses. *People v. Devine* (1981), 101 Ill. App. 3d 158, 427 N.E.2d 1277.

■ In order to find defendants guilty of aggravated criminal sexual assault, the trier of fact must find that they committed an act of sexual penetration by the use of force or threat of force, and that aggravating circumstances existed during the commission of this offense. (Ill. Rev. Stat., 1984 Supp., ch. 38, par. 12—14.) A conviction for aggravated criminal sexual assault, when the defendant denies the charge, will be upheld when there is either some corroboration of the testimony of the prosecuting witness or when that testimony is otherwise clear and convincing. (*People v. Graham* (1978), 60 Ill. App. 3d

1034, 377 N.E.2d 179.) The testimony of the complaining witness need not be uncontradicted or unimpeached in order to be deemed clear and convincing. *Graham,* 60 Ill. App. 3d 1034, 377 N.E.2d 179.

■ We believe that here, the testimony of the victims and of Jones adequately established that the offense of aggravated criminal sexual assault occurred. They all gave substantially similar accounts of the events of that evening. Their testimony is entirely consistent. All three parties testified to virtually the same set of events in the same sequence.

■ The fact that there was no physical evidence of semen to corroborate the victims' assertions does not render their testimony unbelievable. Such physical evidence is not required to sustain a conviction for a sex offense since the presence of semen is not required to prove commission of a sex crime. (*People v. DuPree* (1987), 161 Ill. App. 3d 951, 514 N.E.2d 583.) Moreover, neither victim testified that defendants ejaculated, only that defendants attempted various types of sexual contact. Thus, defendants' reliance on the lack of this type of physical evidence is unwarranted.

■ We similarly are unpersuaded by defendants' contention that the victims' testimony must be discounted because the victims were so intoxicated that evening that their memories were affected and they could not accurately recall the events which transpired. Defendants note that the male victim had a blood-alcohol level of 1.53 and the female victim had a blood-alcohol level of 2.07.

We believe the jury was adequately informed of the physical condition of the victims that evening and was in the best position to evaluate the effect which their physical condition had on their ability to observe and to remember. (See *People v. Stokes* (1979), 71 Ill. App. 3d 773, 389 N.E.2d 1352.) The jury was aware of the level of blood alcohol in each of the victims. Moreover, the jury heard the male victim's testimony that although he was intoxicated, he was able to remember the events of that night. The jury reasonably could have concluded that the victims' level of intoxication did not significantly affect their ability to observe and to remember.

■ Defendants further contend that various discrepancies and uncertainties in the female victim's testimony render her testimony unbelievable. We believe her testimony was sufficiently clear and convincing to sustain defendants' convictions. Moreover, any discrepancies merely go to the weight to be accorded her testimony by the trier of fact. (See, *e.g., People v. Trejo* (1976), 40 Ill. App. 3d 503, 352 N.E.2d 68.) Her testimony was also substantially corroborated by the clear and convincing testimony of the male victim and of Jones.

Defendants finally contend that Jones' testimony must be discounted because he was indicted for the same offense as defendants and had agreed to testify in exchange for a recommendation that he receive a lesser sentence. We believe that Jones' testimony was afforded the appropriate measure of credit. The jury was informed of the arrangements which Jones had made with the State's Attorney's office; the jury was given the opportunity to observe Jones' demeanor when testifying; and the jury was instructed that because Jones was involved in the crime, his testimony was to be treated with suspicion.

■■ Although promises of leniency require that an accomplice's testimony be regarded with some degree of skepticism, a conviction based on such evidence may stand if the testimony is of such a character as to convince a jury of a defendant's guilt beyond a reasonable doubt. (*People v. Brisbon* (1980), 89 Ill. App. 3d 513, 411 N.E.2d 956.) Whether accomplice testimony, corroborated or not, is satisfactory for conviction goes to the weight of the evidence and properly is in the province of the jury. (*Brisbon*, 89 Ill. App. 3d 513, 411 N.E.2d 956.) The fact that the witness may have had an expectation of leniency does not alone render his testimony incredible. We find defendants' contention that Jones' testimony is unbelievable to be unmeritorious. Defendants were proved guilty of aggravated criminal sexual assault beyond a reasonable doubt.

Michael Allman additionally contends that he was not proved guilty of robbery beyond a reasonable doubt.

■■ The offense of robbery is committed when a defendant, by force or threat of force, causes the victim to part with property against his will. (Ill. Rev. Stat. 1983, ch. 38, par. 18—1.) Here, the jury heard the male victim's testimony that Michael hit him, knocked him to the ground and demanded that he give Michael his money. Moreover, both the male victim and Jones testified that Michael threatened to kill the male victim if he did not give Michael his money and that Michael took his wallet. Thus, the testimony was sufficient to prove Michael guilty of robbery.

Defendants next contend that their convictions for aggravated battery and unlawful restraint must be set aside because they arose from the more serious offense of aggravated criminal sexual assault. Defendants argue that they would be unduly prejudiced by multiple convictions arising from the same series of acts.

■■ Prejudice results to the defendant when more than one offense is carved from the same physical act. (*People v. King* (1977), 66 Ill. 2d 551, 363 N.E.2d 838.) In such situations, it is proper to enter a judgment and sentence only on the most serious of the offenses. (*Peo-*

*ple v. Sass* (1979), 73 Ill. App. 3d 554, 392 N.E.2d 399.) Multiple convictions and concurrent sentences should be permitted, however, in cases in which a defendant has committed several interrelated acts so long as the convictions are not for included offenses. *King,* 66 Ill. 2d 551, 363 N.E.2d 838; *People v. Sanford* (1983), 119 Ill. App. 3d 160, 456 N.E.2d 333.

■■ The Criminal Code of 1961 defines a lesser included offense as one which "(a) [i]s established by proof of the same or less than all of the facts or a less culpable mental state (or both), than that which is required to establish the commission of the offense charged." (Ill. Rev. Stat. 1983, ch. 38, par. 2—9(a).) Thus, the greater offense must fully embrace all of the elements of the lesser offense. *People v. Smith* (1980), 78 Ill. 2d 298, 399 N.E.2d 1289.

We will initially address whether unlawful restraint is a lesser included offense of aggravated criminal sexual assault. Although defendants failed to raise the issue at trial or in their post-trial motion, we will address defendants' contention.

In *People v. McCann* (1979), 76 Ill. App. 3d 184, 394 N.E.2d 1055, the court held that unlawful restraint was a lesser included offense of rape because all the elements of the former necessarily are present in the latter. Thus, the court found that a defendant convicted of rape could not also be convicted of unlawful restraint. (*McCann,* 76 Ill. App. 3d 184, 394 N.E.2d 1055.) The State cites *People v. Webb* (1986), 143 Ill. App. 3d 427, 493 N.E.2d 52, in support of its position that a defendant may be convicted of both unlawful restraint and aggravated criminal sexual assault. The *Webb* court, however, discussed the issue of unlawful restraint as a lesser included offense of rape only in *dicta* as defendant had waived the issue for purposes of appeal. (*Webb,* 143 Ill. App. 3d 427, 493 N.E.2d 52.) Therefore, we need not rule within the parameters of that court's discussion.

Moreover, were we to follow the *Webb* decision as it relates to this issue, we still would find that unlawful restraint is a lesser included offense of aggravated criminal sexual assault. In *Webb,* there were three separate and distinct instances in which the complainant was detained unlawfully, one of which did not involve sexual contact between defendant and complainant. Furthermore, these instances occurred over a period of several hours. Although each act occurred between defendant and complainant, the court concluded that each act was not a part of the same transaction. Accordingly, the court determined that it could affirm convictions for unlawful restraint and rape, and not violate the *King* mandate. *Webb,* 143 Ill. App. 3d 427, 493 N.E.2d 52.

■■ We believe, however, that in the absence of facts such as those found in *Webb*, unlawful restraint is a lesser included offense of aggravated criminal sexual assault. Thus, *McCann*, and not *Webb*, controls our resolution of defendants' contention that the convictions for unlawful restraint be vacated. Here, the sexual assault and the unlawful restraint each were an interrelated act in the same transaction. In this setting, as in *McCann*, unlawful restraint is a lesser included offense of aggravated criminal sexual assault. Accordingly, the *King* decision mandates that the convictions for unlawful restraint be vacated.

■■ As to the charges of aggravated battery, defendants did not raise the issue either at trial or in their post-trial motion. More importantly, defendants present no argument in their brief in support of their contention that aggravated battery is a lesser included offense of aggravated criminal sexual assault and thus that those convictions must be vacated. Consequently, we deem the issue waived. Nevertheless, we find that the charges of aggravated battery are not carved out of the same physical conduct of aggravated criminal sexual assault. (See *King*, 66 Ill. 2d 551, 363 N.E.2d 838.) The evidence discloses that after the sexual assaults had been completed, both victims were kicked and beaten, and the female victim was struck with a brick, causing great bodily harm. Defendants were properly convicted of aggravated battery.

However, aggravated battery is a Class 3 felony (Ill. Rev. Stat. 1983, ch. 38, par. 12—4(e)), carrying a maximum sentence of not less than two years and not more than five years. Consequently, it was improper to sentence defendants to terms of seven years for aggravated battery. Nevertheless, we do not believe that it is necessary to remand the causes for resentencing.

Accordingly, defendants' convictions for aggravated criminal sexual assault, and Michael Allman's conviction for robbery, are affirmed. Defendants' convictions for aggravated battery are affirmed, but the sentences are reduced to five years. Defendants' convictions for unlawful restraint are vacated.

Judgments affirmed in part; affirmed in part as modified; vacated in part.

FREEMAN, P.J., and WHITE, J., concur.