2021 IL App (1st) 190025-U

No. 1-19-0025

Order filed March 17, 2021

Third Division

**NOTICE:** This order was filed under Supreme Court Rule 23 and is not precedent except in the limited circumstances allowed under Rule 23(e)(1).

_____

IN THE

APPELLATE COURT OF ILLINOIS

FIRST DISTRICT

_____

| | | |
|---|---|---|
| THE PEOPLE OF THE STATE OF ILLINOIS, | ) | Appeal from the |
| | ) | Circuit Court of |
| Plaintiff-Appellee, | ) | Cook County. |
| | ) | |
| v. | ) | No. 16 CR 5191 |
| | ) | |
| MICHAEL BLACKMAN, | ) | Honorable |
| | ) | Stanley J. Sacks, |
| Defendant-Appellant. | ) | Judge, presiding. |

_____

JUSTICE McBRIDE delivered the judgment of the court.
Presiding Justice Howse and Justice Ellis concurred in the judgment.

**ORDER**

¶ 1     *Held*:   Defendant's sentence of 25 years' imprisonment for armed robbery with a firearm is affirmed over his contentions that the trial court improperly considered a factor inherent in the offense and facts not in evidence as aggravating factors.

¶ 2     Following a bench trial, defendant Michael Blackman was convicted of armed robbery with a firearm (720 ILCS 5/18-2(a)(2) (West 2016)), and sentenced to 25 years in prison. On appeal, defendant contends that the court considered a factor inherent in the offense and speculated as to the facts underlying defendant's past convictions when sentencing him. We affirm.

¶ 3     Defendant was charged by indictment with one count of armed robbery with a firearm and one count of aggravated unlawful restraint.

¶ 4     At trial, Andre Patton testified that around 6 or 6:30 p.m. on March 11, 2016, he cashed his paycheck at a currency exchange and returned home, pulling into an alley near Kostner Avenue and Wilcox Street. Patton exited his vehicle to pay his landlord rent, and a black Escalade parked behind his vehicle. Two men approached from the Escalade. Patton identified defendant in court as one of the men. It was sunny, and nothing obstructed Patton's view of defendant.

¶ 5     Defendant drew a firearm and told Patton "to hand him what [he] had got." Defendant put the firearm "in front of [Patton's] face" and pushed Patton's chest with it. The weapon was "hard" and "metallic," and Patton was familiar with firearms. Patton gave defendant his money, and defendant and the other man drove away in the Escalade. Patton found police officers and directed them to where the Escalade was stuck in traffic on the corner of Kostner and Jackson Boulevard. The officers drove beside the Escalade, which jumped the curb and turned a corner. Patton then lost sight of the officers and the vehicle. Later, he went to a police station and viewed a photo array wherein he identified defendant as the man with the firearm.

¶ 6     On cross-examination, Patton denied seeing either man at the currency exchange. The robbery took four minutes, the armed individual had a dark complexion, and the firearm was gray and resembled a "45 or 9-millimeter."

¶ 7     Chicago police officer Joseph Lisciandrello testified that on March 11, 2016, he was on patrol in his squad car when Patton approached him and identified a black Escalade at the intersection, containing individuals who robbed him. Lisciandrello drove near the Escalade, and it jumped the curb and drove away. After a chase, the vehicle stopped, and four men fled.

Lisciandrello found money and documents scattered around the front cabin of the vehicle, and he ran the license plate, which "came back to" defendant.

¶ 8     Chicago police detective Michael Duignan testified he interviewed Patton at a police station on March 11, 2016. Patton viewed a photo array and identified defendant, who was arrested on March 16, 2016. On cross-examination, Duignan testified that in the general offense case report Patton described two individuals with light brown complexions.

¶ 9     The State entered a stipulation that on March 11, 2016, an officer recovered a document addressed to defendant from the United States Department of the Treasury from the "black 2014 Cadillac" which was registered to defendant. The State admitted vehicle records from the Illinois Secretary of State, which showed the Cadillac Escalade was registered to defendant.

¶ 10    Defendant called Chicago police detective Howe, who testified that he spoke with Patton on March 11, 2016.[1] Patton described the firearm he was robbed with as black and red.

¶ 11    The defense entered a stipulation that the sun set by 5:54 p.m. on March 11, 2016.

¶ 12    Following arguments, the court found defendant guilty of armed robbery with a firearm and not guilty of unlawful restraint. In so holding, the court observed that defendant pushed Patton with a firearm, and that every "stickup" committed with a firearm was "half an inch away from a murder, every single time." Defendant filed a motion for new trial, which was denied.

¶ 13    The presentencing investigation report (PSI) stated that defendant was employed at a factory for two months prior to incarceration, took medication for manic depression, and dropped out of high school because he was arrested for a robbery. His father died when he was 11 years

---

[1] Howe stated that he was working as a police officer on March 11, 2016, but was a detective at the time of trial. Howe's first name is not in the record.

old, and his mother raised him. Defendant joined the Traveling Vice Lord street gang when he was 14, but left the gang "a while ago." He began consuming alcohol and marijuana at age 16, and formerly used Ecstasy pills.

¶ 14    Defendant's criminal history included a conviction for manufacture or delivery of cocaine with four years' imprisonment in 2004, a conviction for possession of a stolen vehicle with six years' imprisonment in 2012, and a misdemeanor conviction for soliciting unlawful business in 2013. The PSI also stated that defendant was found guilty of "[r]obbery /w firearm" in case No. 06 CR 1485401 and sentenced to three years' imprisonment "concurrent with 06cr1590101."[2] The phrase "/w firearm" is crossed out, but the PSI does not indicate when the alteration was made or by whom.

¶ 15    At sentencing, the court asked about the robbery conviction, and noted that if defendant were found guilty of armed robbery with a firearm, "it would have carried a 21-year minimum." The State explained that defendant "was initially charged with a firearm," but was only found guilty of robbery in "[b]oth of those case numbers" and sentenced to concurrent three-year terms.

¶ 16    At the sentencing hearing, defendant called his aunt, Shazadia Blackman, who testified that he sometimes lived with her, helped when he was home, and was obtaining his GED.

¶ 17    In aggravation, the State emphasized that defendant put a firearm in Patton's face to rob him, and that defendant's criminal history included "two concurrent robberies, which were at one time, robbery with a firearm." In mitigation, defense counsel noted that defendant lacked a relationship with his father, and had been diagnosed with manic depression. In allocution,

---

[2] Case No. 06 CR 1590101 does not correspond with the case numbers for any of the other convictions listed in the PSI.

defendant asked for mercy and apologized "for taking [his] family *** through [this] whole ordeal."

¶ 18    When announcing sentence, the court stated that just "stick[ing] somebody up with a gun" carried "by itself, 21 years," but defendant's robbery was "not an isolated incident." The court then listed defendant's four prior convictions and sentences. It observed that when a firearm is used in a robbery "the implication is, give me the money" or else "I'll shoot you and take the money," and that "every armed robbery is about an 8th of an inch away from a murder." The court explained that "the facts in the case" and what defendant "did that day" is why defendant was being sentenced to prison.

¶ 19    The court then reiterated that the minimum sentence "standing alone" was "a significant amount of time," but the instant proceedings were not defendant's "first rodeo." In particular, the court noted defendant's "[t]wo prior robberies," where "maybe a gun wasn't used" or "[m]aybe it was," but "nonetheless" both involved "using force to accomplish a crime, taking someone else's property." The court stated that it considered all the factors in aggravation and mitigation, the PSI, defendant's aunt's statement, his familial support, and the absence of his father. The court emphasized that, in this case, "the crime itself" was the most important factor at sentencing. The court observed once more that every armed robbery was "a little bit away from a murder" and stated it was "not a big fan of stickup men." The court sentenced defendant to 25 years in prison.

¶ 20    Defendant filed a motion to reconsider sentence that argued the 25-year sentence was not consistent with his potential for rehabilitation. After oral argument, the court addressed the risk of murder when committing armed robbery with a firearm, defendant's criminal history, and the sentencing range of 21 to 45 years. Finally, the court stated that a 20-year sentence "might be

appropriate" if defendant had "[n]o prior record," but in this case, defendant had prior convictions. The court denied the motion.

¶ 21     On appeal, defendant argues the trial court improperly considered a factor inherent in the offense, namely, the dangerousness inherent in armed robbery, and speculated about defendant's prior convictions when sentencing him.

¶ 22     Defendant failed to argue either issue in a contemporaneous objection or in his motion for reconsideration of the sentence. "It is well settled that, to preserve a claim of sentencing error, both a contemporaneous objection and a written postsentencing motion raising the issue are required." *People v. Hillier*, 237 Ill. 2d 539, 544 (2010). Consequently, these claims are forfeited. *Id.* at 544-45. Defendant, however, requests review of these issues under the plain error doctrine.

¶ 23     Under the plain error doctrine, we may consider an unpreserved error on review where a clear or obvious error "alone threatened to tip the scales of justice" because the evidence was closely balanced, or "is so serious that it affected the fairness of the defendant's trial and the integrity of the judicial process, regardless of the closeness of the evidence." *People v. Jones*, 2016 IL 119391, ¶ 10. Defendant bears the burden of establishing plain error. *Id.* First, we must determine if a clear or obvious error occurred. *Id.*

¶ 24     Initially, the parties disagree on the standard of review for defendant's claim that the court considered a factor inherent in the offense as an aggravating factor. The State argues that a forfeited allegation of error pertaining to a sentence within statutory limits is reviewed for abuse of discretion, while defendant argues that a sentencing court has no discretion to consider an improper factor such that review is *de novo*.

¶ 25    Traditionally, sentencing decisions are within a trial court's discretion, and given great deference by the appellate court. *People v. Abdelhadi*, 2012 IL App (2d) 111053, ¶ 8. "Nonetheless, the question of whether a court relied on an improper factor in imposing a sentence ultimately presents a question of law to be reviewed *de novo*." *Id.* There is a strong presumption that the sentencing court made its decision for appropriate legal reasons. *People v. Williams*, 2018 IL App (4th) 150759, ¶ 18. Ultimately, "[t]he defendant bears the burden of establishing that a sentence was based on improper considerations." *Abdelhadi*, 2012 IL App (2d) 111053, ¶ 9. This requires a review of the whole record and not just "a few words or statements made by the sentencing court." *People v. Valadovinos*, 2014 IL App (1st) 130076, ¶ 47.

¶ 26    Generally, a factor inherent in the offense for which a defendant has been convicted cannot also be used as an aggravating factor in determining his sentence. *People v. Phelps*, 211 Ill. 2d 1, 11 (2004); *People v. Harmon*, 2015 IL App (1st) 122345, ¶ 124. "A sentence based upon an improper aggravating factor violates a defendant's 'fundamental right to liberty' and unjustly affects the right to be sentenced on proper factors." *Harmon*, 2015 IL App (1st) 122345, ¶ 124 (quoting *People v. James*, 255 Ill. App. 3d 516, 531 (1993)). As the legislature already considered the factors inherent in the offense in determining the range of punishment, considering them in sentencing is improper. *Phelps*, 211 Ill. 2d at 12.

¶ 27    "However, the rule that a court may not consider a factor inherent in the offense should not be applied rigidly because sound public policy demands that a sentence be varied according to the circumstances of the offense." *People v. Bunning*, 2018 IL App (5th) 150114, ¶ 15. The mere act of addressing an improper factor in sentencing does not always demand remand for resentencing. *People v. Beals*, 162 Ill. 2d 497, 509-10 (1994). If the appellate court cannot determine the weight

that the trial court gave to an improper factor in aggravation, it must order resentencing. *People v. Minter*, 2015 IL App (1st) 120958, ¶ 152. "Conversely, where the trial court appears to place minimal emphasis upon an improper factor, a new sentencing hearing is not required." *Id.* To determine the weight given to such factors, this court looks to the comments of the trial court and "whether the sentence received was substantially less than the maximum sentence permissible by statute." *People v. Dowding*, 388 Ill. App. 3d 936, 945 (2009).

¶ 28    As noted, defendant argues the trial court improperly considered a factor inherent in the offense when, during sentencing, the court spoke about the dangers involved in "every single" armed robbery. At the sentencing hearing, the court stated that the minimum sentence for armed robbery was 21 years, but the robbery was "not an isolated incident" and instead was defendant's fifth felony conviction. The trial court addressed the risk of murder while committing armed robbery with a firearm, but at no point did the court say that any conduct inherent in the offense was an aggravating factor in defendant's sentence. Instead, it recognized the minimum was a significant amount of time but not defendant's first conviction. During the hearing on the motion to reconsider, the court stated that with no prior record a lesser sentence may have been appropriate, but because of defendant's past convictions it would not reconsider defendant's 25-year sentence.

¶ 29    Furthermore, at the sentencing hearing, the court found that "the facts in the case" were key to defendant's sentence. See *Bunning*, 2018 IL App (5th) 150114, ¶ 15 ("sound public policy demands that a sentence be varied according to the circumstances of the offense"). Specifically, defendant brandished the firearm in front of Patton's face and pushed Patton's chest with it. Additionally, defendant was sentenced to 25 years on a range of 21 to 45 years, far lower than the

maximum sentence. 720 ILCS 5/18-2(b) (West 2016) (armed robbery with a firearm is a Class X felony with a 15-year additional sentence); 730 ILCS 5/5-4.5-25(a) (West 2016) (sentencing range of a Class X felony is 6 to 30 years). Given this review of the whole record, defendant has not met his burden of establishing that the court sentenced him based on consideration of a factor inherent in the offense, and not on appropriate sentencing factors.

¶ 30     Defendant next argues that the trial court improperly relied on speculation about the facts underlying his past convictions. As noted, defendant forfeited this issue, and therefore has the burden to show that a clear or obvious error occurred in order for plain error review to be merited. See *Jones*, 2016 IL 119391, ¶ 10.

¶ 31     The trial court may consider a defendant's criminal history in determining a sentence (*People v. Brown*, 2018 IL App (1st) 160924, ¶ 8), but not the mere fact of pending charges or arrests (*People v. Johnson*, 347 Ill. App. 3d 570, 575 (2004)). When the defendant or the State believes that the PSI contains inaccuracies, they have the burden to call any such inaccuracy to the court's attention, and the better practice is for the court to ask if there are errors in the report. See *People v. Powell*, 199 Ill. App. 3d 291, 294-95 (1990); see also *People v. Hibbler*, 2019 IL App (4th) 160897, ¶ 52.

¶ 32     Defendant's PSI originally stated that his prior convictions included robbery with a firearm. During sentencing, the court noted that defendant received a 3-year sentence for this offense, which in fact "carried a 21-year minimum." The State explained that the PSI was incorrect, and defendant "was initially charged with a firearm," but was found guilty of robbery. Later, the court observed that in defendant's "[t]wo prior robberies *** maybe a gun wasn't used" or "[m]aybe it was," but the offenses "nonetheless" involved "using force to accomplish a crime, taking someone else's

property." Read in context, the court's statements do not show that it placed any weight on defendant's initial charges in his past convictions. Instead, the court appropriately considered defendant's actual convictions in sentencing. See *Brown*, 2018 IL App (1st) 160924, ¶ 8 (court may consider defendant's criminal history in determining sentence). Thus, there was no plain error and defendant's argument is meritless.

¶ 33    For the foregoing reasons, we affirm the judgment of the circuit court.

¶ 34    Affirmed.